UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ORLANDO FERNANDEZ, :
    Plaintiff :
:
vs. : Civil Action No. 1:12-CV-278
:
:
DONALD REINHART, *et al.*, :
    Defendants. :
:
:

*M E M O R A N D U M*

*I.*    *Introduction*

We are considering a motion for summary judgment, (Doc. 39), filed December 23, 2013, by Defendants Pamela Rollings-Mazza, Erik Von Kiel, Jennifer Miosi, Chris Jensen, Toby Catone, Jeff Leer, Shannon Taylor, Robin Rochow, Michelle Rau, Laura Skaggs, and John/Jane Doe (hereinafter collective referred to as "Medical Defendants"). In addition, on December 31, 2013, Plaintiff filed a motion to reset discovery deadlines (Doc. 45), that we will also consider herein.

On December 17, 2012, Plaintiff filed an amended complaint asserting multiple claims against a host of defendants under 42 U.S.C. § 1983, arising from his confinement at York County Prison. (Doc. 16). Following the Medical Defendants' motion to dismiss (Doc. 17), and pursuant to our April 10, 2013 memorandum, the only remaining claims against these defendants are: an Eighth Amendment claim against Dr. Von Kiel and Physician's Assistant Catone for failure to provide physical therapy; and a

claim against all of the Medical Defendants for their alleged failure to treat Plaintiff's abscessed tooth. (See Doc. 26). Trial in this matter is presently scheduled to begin April 14, 2014. For the reasons that follow, we will grant summary judgment for the Medical Defendants, and deny Plaintiff's motion to reset discovery deadlines as moot.

II.  Background

    *A. Physical Therapy Claim*

On or about February 17, 2010, Plaintiff complained of pain from injuries that he allegedly received during an altercation in York County Prison. (Doc. 48-1, ¶ 13; Doc. 49, ¶ 13). Plaintiff claimed to have pain in his right knee, foot, ankle, back, neck, and left thumb. (Doc. 48-1, ¶ 13; Doc. 49, ¶ 13). Plaintiff's thumb and ankle were x-rayed, but no fractures were detected. (Doc. 48-1, ¶ 14; Doc. 49, ¶ 14). Plaintiff was provided Naproxen and Zantac. (Doc. 40-1 at 18). On approximately March 17, 2010, Plaintiff was seen by Defendant Von Kiel for the same complaints, and he prescribed stronger pain medication and scheduled an appointment for Plaintiff at York Hospital. (Doc. 48-1, ¶ 20; Doc. 49, ¶ 20). On March 30, 2010, Plaintiff was seen by Dr. James Perry at York Hospital. (Doc. 48-1, ¶ 25; Doc. 49, ¶ 25). X-rays again revealed no acute injuries, but Dr. Perry gave Plaintiff injections in his knees and ordered physical therapy to "help get [Plaintiff] ambulating again." (Doc. 48-1, ¶ 28; Doc. 49 ¶ 28; Doc. 40 ¶¶ 17, 19). Dr. Perry also prescribed Mobic, an anti-inflammatory medication, and requested that Plaintiff return for follow-up care within four weeks. (Doc. 48-1, ¶¶ 29, 33; Doc. 49, ¶ 29, 33).

Prison medical records show that Plaintiff was seen by a physical therapist at York Prison on April 16, 2010.  (Doc. 48-1, ¶ 38; Doc. 49, ¶ 38).  On May 11, 2010, approximately six seeks after his initial visit with Dr. Perry, Plaintiff was returned to York Hospital and was evaluated by Dr. Michael Van Manen.  (Doc. 40-3, at 6).  Dr. Van Manen advised Plaintiff to continue physical therapy to work on building strength in his lower extremities.  (Doc. 48-1, ¶ 45; Doc. 49, ¶ 45).  Plaintiff completed a second visit with a physical therapist on May 21, 2010.  (Doc. 48-1, ¶ 47; Doc. 49, ¶ 47; Doc. 40-2 at 35).  On June 1, 2010, Plaintiff complained to a physician's assistant at the prison that a physical therapist came to see him and gave him exercises to do but "that was it."  (Doc. 40, ¶ 30).  When Dr. Von Kiel followed up with Plaintiff on August 23, 2010, Plaintiff again complained that the therapy was ineffective.  (Doc. 40, ¶ 34).

At his deposition on September 13, 2013, Plaintiff acknowledged that he was seen by a physical therapist at York Prison who showed him range of motion exercises and instructed him to do them daily in his cell.  (Doc. 40-4, at 54-57).  Plaintiff was unsatisfied with this treatment, and testified: "I just felt like they – I was so used to on the outside when I did get hurt, I was given . . . you know, hot towels, massages with the machines, you know, those main things.  My injuries healed better.  But just to tell me move this and that . . . I felt like I was just blown off."  (Doc. 40-4, at 59).  When asked if his basic complaint was that he disagreed with the type of therapy he received, Plaintiff responded, "Yes." (Doc. 40-4, at 60).

*B. Dental Care Claim*

According to prison medical records, Plaintiff completed a sick call request complaining of a toothache on January 6, 2010. (Doc. 48-1, ¶ 3; Doc. 49, ¶ 3). On January 7, Plaintiff was examined by Dr. Christopher Paluch, DMD, who found no sign of serious decay, and instructed Plaintiff regarding dental hygiene. (Doc. 48-1, ¶ 4; Doc. 40, ¶ 65). Plaintiff was also told to obtain Sensodyne from the commissary and to take Tylenol for pain, as needed. (Doc. 48-1, ¶¶ 4-5; Doc. 40, ¶ 66). Plaintiff completed additional sick call requests for dental treatment on May 7, 2010, and May 10, 2010. (Doc. 40-6 at 2-3). Dental Assistant Catriona Bolding provided Plaintiff with Sensodyne on May 10, and followed up with him two days later regarding his toothache. (Doc. 48-1, ¶ 41; Doc. 40-2 at 38). On May 28, 2010, Plaintiff again saw Ms. Bolding for pain in his upper right jaw. (Doc. 48-1, ¶ 49; Doc. 40, ¶ 70). She found no cavities, but referred Plaintiff for an x-ray and gave him a tube of Orajel. (Doc. 48-1, ¶ 49; Doc. 40-7 at 2). Plaintiff was prescribed Amoxicillin from May 28, 2010 through June 8, 2010, and Tylenol, from June 2, 2010, through July 1, 2010. (Doc. 40-8). On July 6, 2010, Dr. Paluch examined Plaintiff and performed dental x-rays. (Doc. 48-1, ¶ 59; Doc. 40, ¶ 77). X-rays revealed a cavity and an abscess in Plaintiff's lower right jaw. (Doc. 48-1, ¶ 59; Doc. 40, ¶ 77). Plaintiff declined to have the tooth extracted in hopes of getting a root canal after his release from prison. (Doc. 48-1, ¶ 59; Doc. 40, ¶ 78). Dr. Paluch prescribed Tylenol and Penicillin, and told Plaintiff to notify him if he wished to proceed with the extraction. (Doc. 48-1, ¶ 59; Doc. 40, ¶ 79-80).

Between July 16, 2010 and September 1, 2010, Ms. Bolding followed up with Plaintiff four times regarding his dental problems. (Doc. 40, ¶¶ 84, 85, 88, 91). During this time, Plaintiff complained of pain periodically, and was prescribed over-the-counter pain medications and antibiotics. (Doc. 40, ¶¶ 86, 89, 90). On August 6, he submitted a sick call request claiming that he was told his tooth was going to be extracted on August 4. (Doc. 40-6, at 6). On August 13, 2010, Ms. Bolding notified Plaintiff that he was being referred to an oral surgeon because Plaintiff's tooth had unusually long roots that would make the extraction difficult. (Doc. 40, ¶ 86). On September 8, 2010, Plaintiff's tooth was extracted by an oral surgeon. (Doc. 48-1, ¶ 74; Doc. 49, ¶ 74). That same day, Ms. Bolding followed up with Plaintiff and he reported no problems following the extraction. (Doc. 40-2 at 21). Plaintiff again reported no problems at his yearly dental examination on November 22, 2010. (Doc. 40-7, at 1).

III.	Discussion

  *A. Standard of Review*

We will examine the motion for summary judgment under the well-established standard. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d. Cir. 2008) ("Summary judgment is only appropriate if there are no genuine issues of material fact."). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion "if no reasonable juror could find for the non-movant." Id. If the moving party demonstrates that no genuine issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a

genuine issue for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

Here, Plaintiff is claiming that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. To establish this claim, the plaintiff must show that a prison official knew of and disregarded an excessive risk to the prisoner's health. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). This test is two-pronged. First, a plaintiff must show that the defendants were deliberately indifferent to his medical needs. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Deliberate indifference exists where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Id. Second, a plaintiff must show that those medical needs are serious. Id. "A 'serious' medical need may be fairly regarded as one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires." Id. "A mere difference of opinion between the prison's medical staff

and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Jones v. Fisher, No. 3:12-cv-2113, 2013 WL 5322786, *6 (M.D. Pa. Sept. 20, 2013) (Nealon, J.).

### B. Physical Therapy Claim

Plaintiff alleges that Defendants Von Kiel and Catone were deliberately indifferent to his serious medical need to receive physical therapy. However, the record is replete with evidence demonstrating that Plaintiff did receive physical therapy. Prison medical records show that Plaintiff saw a physical therapist on April 16, 2010, and May 21, 2010, as recommended. (Doc. 49-1, ¶ 38; Doc. 40-2 at 35, 43). The physical therapist showed Plaintiff range of motion exercises that he could do in his cell, and instructed him to perform the exercises once per day. (Doc. 40-4 at 54-57). On June 1, 2010, Plaintiff complained to a physician's assistant that a physical therapist had seen him and gave him exercises to perform but "that was it." (Doc. 40-1 at 10). On August 23, 2010, Plaintiff complained to Dr. Von Kiel that the physical therapy he received was ineffective. (Doc. 40-1 at 6). Finally, and most notably, Plaintiff acknowledged in his deposition testimony that he saw a physical therapist at York Prison, but stated that he was not satisfied with the therapy he received, and felt that he had been "blown off." (Doc. 40-4 at 59). When asked if he thought he should have been provided a different type of therapy, Plaintiff responded, "Yes." (Doc. 40-4 at 60).

Plaintiff has failed to proffer any record evidence supporting his claim that Defendants were deliberately indifferent to his medical need for physical therapy, and

thus cannot meet the first prong of this test.  Although Plaintiff attempts to create factual disputes by asserting that his needs were ignored on multiple occasions, Plaintiff cites no evidence of record to support these claims.  (See, e.g., Doc. 48-1, ¶¶ 6-12, 15-24, 34-37).  Instead, Plaintiff relies chiefly on the allegations in his amended complaint.  The Third Circuit has repeatedly instructed that a nonmoving party may not rely simply on the allegations in the complaint to defeat summary judgment, but "must rely on affidavits, depositions, answers to interrogatories, or admissions on file." GFL Advantage Fund, LTD v. Colkitt, 272 F.3d 189, 199 (3d Cir. 2001).  Reviewing the undisputed facts, we conclude that Plaintiff did receive therapy, as prescribed, but brought this suit because he was displeased with the type of therapy provided.  As explained above, a mere difference of opinion between an inmate and prison doctors regarding the proper course of treatment does not constitute a violation of that inmate's Eighth Amendment rights. Accordingly, Defendants are entitled to summary judgment on the physical therapy claim.

*C.  Dental Care Claim*

Plaintiff also claims that the Medical Defendants violated his Eighth Amendment rights by failing to treat his abscessed tooth.  We find no record evidence supporting Plaintiff's claim that the Medical Defendants were deliberately indifferent to his serious dental problems.

Plaintiff first complained of a toothache in early January 2010.  He was examined promptly by prison dental staff but no sign of serious decay was found.  Records show that between May and July 2010, Plaintiff was seen multiple times for

toothaches and pain in his upper right jaw, and was prescribed over-the-counter pain medication and antibiotics.  Although Plaintiff was examined multiple times, no sign of dental problems were evident until July 6, 2010, when Dr. Paluch performed x-rays that revealed a cavity and an abscess in Plaintiff's lower right jaw.  Notably, this was not the area where Plaintiff complained of pain.  Although Dr. Paluch recommended that the tooth be extracted, *Plaintiff declined*.  Instead, Plaintiff stated that he wished to wait until after his release from prison to obtain a root canal.  Dr. Paluch prescribed Penicillin and Tylenol and advised Plaintiff to return if he decided to proceed with the extraction.  Between July and September, prison medical officials followed up with Plaintiff multiple times and provided additional treatment in the form of pain medications and antibiotics.  In early August, Plaintiff indicated that he wished to proceed with the extraction, and by the first week in September, Plaintiff's tooth was extracted by an oral surgeon.  Based upon our review of the record, it appears that the Medical Defendants were responsive to Plaintiff's complaints and, in fact, provided Plaintiff with frequent dental care.  It was Plaintiff's own refusal to proceed with the tooth extraction in July that caused the delay in his treatment.  Plaintiff has failed to proffer any evidence that disputes these facts, and therefore, we will grant summary judgment in favor of the Medical Defendants.

*V.*     *Conclusion*

For the foregoing reasons, we find that the Medical Defendants are entitled to summary judgment on both of the remaining claims.  Plaintiff's motion to reset discovery deadlines is moot.  We will issue an appropriate order.